IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH R. PEDRO,                                  No. 2:13-cv-0492-CMK

        Plaintiff,

   vs.                                              MEMORANDUM OPINION AND ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 19).  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

# I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits with a protective filing date of October 28, 2010, alleging an onset of disability on October 1, 2008, due to anxiety related disorder, post traumatic stress disorder, and learning disability (Certified administrative record ("CAR") 44-46, 116).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on November 15, 2011, before Administrative Law Judge ("ALJ") William C. Thompson.  In a December 9, 2011, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.      The claimant has not engaged in substantial gainful activity since October 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq*).

3.      The claimant had the following severe impairments: post traumatic stress disorder, history of childhood attention deficit hyperactivity disorder; history of substance abuse, currently in remission (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to work involving simple instructions with restricted contact with coworkers and the general public.  Restricted contact is defined as the ability to work in presence of others but not be part of a work team or a cooperative work process.

6.      The claimant has past relevant work (20 CFR 404.1565) as a stock clerk, DOT #299.367-014, heavy, semi skilled; and construction worker I, DOT #869.664-014, heavy semi skilled work.  This work is performed at a more demanding skill level than that which he is now capable of performing.

7.      The claimant was born on December 29, 1972 and was 35 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    (CAR 11-215).  After the Appeals Council declined review on January 9, 2013, this appeal

2    followed.

3                              **II.  STANDARD OF REVIEW**

4            The court reviews the Commissioner's final decision to determine whether it is:

5    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

6    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

7    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

8    (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

9    conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

10   both the evidence that supports and detracts from the Commissioner's conclusion, must be

11   considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

12   Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

13   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

14   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

15   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

16   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

17   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

18   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

19   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

20   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

21   Cir. 1988).

22                              **III.  DISCUSSION**

23           Plaintiff argues the ALJ erred in several ways: (1) the ALJ improperly rejected

24   medical opinions; and (2) the ALJ failed to properly credit plaintiff's testimony as well as third

25   party statements.

26   / / /

                                              4

## A.   MEDICAL OPINIONS

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

1  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

2  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

3  see also Magallanes, 881 F.2d at 751.

4              Here, there are no treatment records, and no opinions from treating physicians.

5  Instead, the only records and opinions available are the result of two psychological examinations

6  of plaintiff, and a review of those examinations by a state agency psychologist.

7              Dr. Cushman, who examined plaintiff on March 2, 2011, at the request of the

8  Commissioner, found:

9              Kenneth Pedro will have difficulties performing detailed or
               complex tasks in a work setting.  He does appear capable of
10             performing simple and repetitive tasks in a work setting.  He will,
               however, have great difficulties at this time with regular attendance
11             and consistent participation due to excessive anxiety.  He will have
               a difficult time working a normal workday or work week for the
12             same reasons.  Special or additional supervision does not appear
               needed in the work setting.  He does appear capable of following
13             simple verbal instructions from supervisors, but not complex
               instructions.  He will have significant problems getting along with
14             supervisors, coworkers and the general public over any length of
               time.  He will have great difficulties dealing with the usual
15             stressors encountered in a competitive work environment,
               appearing somewhat under-socialized.
16  (CAR 217).

17             The ALJ gave Dr. Cushman's opinion only slight weight:

18             It is based on the unverified, subjective allegations of the claimant.
               As indicated below, I do not find the claimant credible.  There is a
19             lack of testing, and Dr. Cushman fails even to comment as to
               whether the claimant is a reliable historian.  I have, however,
20             partially accommodated the findings of Dr. Cushman in the
               residual functional capacity set forth herein.  There were numerous
21             inconsistent statements provided to Dr. Cushman.  The claimant
               told the doctor that the longest time he spent in jail was two
22             months, yet he testified that he spent four months in jail on two
               occasions.  The claimant told Dr. Cushman that he drank alcohol
23             regularly up until age 24 and he denied ever resuming regular
               alcohol usage after that age (Exhibit 4F, page 2).  He said the last
24             time he drank any alcohol was in his mid 20's.  Yet he testified that
               he stopped drinking a few years ago, around the time his 5 year old
25             son was born.
26  (CAR 16).

1    Dr. Felix, who examined plaintiff on November 1, 2011, at the request of

2    plaintiff's attorney, concluded:

3           This client, due to his severe molestation during his early years,
            and the psychological wounds left by this molestation, is obviously
4           highly impaired from being stable in all of the important aspects of
            life: vocational, emotional, interpersonal and educational.  These
5           deductions are seen to be valid and are drawn from the evaluation
            of Dr. Cushman and from the intense evaluation by Dr. Felix.

6
            As stated, childhood trauma, impulsive acting out, the use of drugs
7           and alcohol which may have disoriented the client, all contribute to
            making this client an extremely poor vocational candidate.  He was
8           molested by several male relatives as a young child. This client
            needs long-term therapy and medication which he can rely on and
9           feel comfortable with, in order to show better integration
            personally, socially and vocationally.
10   (CAR 253).

11          Dr. Felix found plaintiff shows poor abilities as to understanding and

12   remembering detailed or complex instructions, attendance and concentration, working without

13   supervision, and interacting with the public, coworkers or supervisors.  He has a fair ability to

14   understand and remember short and simple instructions, carry out instructions, adapt to changes

15   in the workplace, be aware of normal hazards, and use public transportation.  (CAR 254).

16          As to Dr. Felix's opinion, the ALJ found that "Dr. Felix simply recites much of

17   Dr. Cushman's report."  (CAR 16).  After setting forth Dr. Felix's opinion, the ALJ stated:

18          I give this opinion slight weight.  Dr. Felix is not a treating
            physician; he evaluated the claimant on one occasion.  He appears
19          to have simply relied on the history obtained by Dr. Cushman.  Dr.
            Felix even acknowledged that "more supporting information would
20          have been desirable for a more longitudinal view" of the claimant's
            issues and that "information (fuller documentation of this
21          claimant's history, medical and psychiatric records) requested by
            Mr. Kolber's office has not been provided."  It appears the doctor
22          did not even ask the claimant if he was currently taking
            psychotropic medication.  He relies on the subjective report of the
23          claimant, who I do not find credible.

24   (CAR 17).

25          In addition to these two examining psychologist opinions, Dr. Pearce, a state

26   agency psychologist, reviewed the case and provided his analysis.  Dr. Pearce opined that a

7

simple Mental Residual Functional Capacity is indicated for plaintiff based on an apparent

inconsistent history of fights "with someone paralyzed by fear and as a consequence unable to

leave his home." (CAR 224). Dr. Pearce opined plaintiff was markedly limited in his ability to

understand and remember detailed instructions, carry out detailed instructions, and interact

appropriately with the general public, but that plaintiff was not significantly limited in any other

category. As to plaintiff's functional capacity assessment, Dr. Pearce found plaintiff capable of

performing simple tasks with routine supervision, relating to supervisors and peers on a

superficial work basis, and adapting to a work situation; but not capable of relating to the general

public. (CAR 239-41). These determinations were reviewed and affirmed by Dr. Garcia.

Plaintiff contends the reasons given for rejecting both examining physicians

opinions were insufficient. Specifically, plaintiff argues that the psychologists were not asked to

perform testing, psychological evaluations are by nature subjective and based on the claimant's

report of symptoms, there is no indication that the examining physicians did not believe plaintiff,

greater weight is generally according to the examining physican than a non-examining physician,

and the doctors' opinions were based on their own observations.

The ALJ did not reject outright the examining physicians' opinions. As set forth

above, the ALJ determined plaintiff capable of a full range of work at all exertional levels,

because he has no physical impairments. However, the ALJ determined he is limited to work

involving simple instructions with restricted contact with coworkers and the general public.

Thus, the ALJ accepted the limitations the examining psychologists set forth as to plaintiff's

ability to deal with complex work, but did not accept the limitations as to plaintiff's ability to

attend and participate in a normal work day and work week.

As there is a contradicting non-examining physician's opinion in the record, the

ALJ was required to set forth specific and legitimate reasons for discounting the examining

physicians' opinions. The reasons set for by the ALJ include the lack of testing (which would

have provided objective clinical evidence), the reliance on plaintiff's subjective allegations, and

1    inconsistent statements the plaintiff provided to the examiner.

2            Plaintiff relies on the Ninth Circuit's decision in Ryan v. Commissioner, 528 F.3d

3    1194 (9th Cir. 2008) for the objection to the ALJ's use of his credibility determination to

4    discount an examining physican's opinion.  As plaintiff notes, in Ryan, the Ninth Circuit stated

5    that "an ALJ does not provide clear and convincing reasons for rejecting an examining

6    physican's opinion by questioning the credibility of the [claimant's] complaints where the

7    [examining physician] does not discredit those complaints and supports his [or her] ultimate

8    opinion with his [or her] own observations."  Id. at 1199-1200.  However, the Ninth Circuit goes

9    on to state that there was "nothing in the record to suggest" the examining physician in that case

10   relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical

11   observations."  Id. At 1200.

12           Here, both the examining psychologists' evaluations were based almost entirely

13   on plaintiff's self reportings.  See Morgan v. Commissioner, 169 F.3d 595, 602 (9th Cir. 1999)

14   (holding that a physician's opinion on disability premised on a claimant's own accounts of his

15   symptoms and limitations may be disregarded where those complaints have been properly

16   discounted).  There are no treating records in this case, and none were provided to the examining

17   psychologists.  The reports from both Dr. Cushman and Dr. Felix were quite clear that the entire

18   examination consisted of plaintiff's self reports, as even the doctors' "mental status exam"

19   portion of the reports continuously recounted what the plaintiff reported to them.  There was very

20   little, if any, clinical observations noted in the reports.

21           As these reports were heavily reliant on plaintiff's subjective self reports, and the

22   ALJ discounted plaintiff's credibility as to those subjective complaints the doctors relied on, this

23   reason is sufficient.  See Morgan, 169 F.3d at 602; see also Bray v. Commissioner, 554 F.3d

24   1218, 1228 (9th Cir. 2009) (reiterating that an ALJ need not accept the opinion of a physican if

25   the opinion is inadequately supported by clinical findings).

26   / / /

1    In addition to the doctors' reliance on plaintiff's subjective complaints, the ALJ

2    also reasoned that there was no objective testing completed, and plaintiff gave inconsistent

3    statements during the evaluation.  Plaintiff argues no testing was requested, but that does not

4    alter the reality that no objective testing was done.

5    Finally, plaintiff argues that the ALJ erred in failing to discuss the non-examining

6    physician's opinion.  In so doing, plaintiff argues the ALJ tacitly rejected that opinion.  However,

7    it is clear from the record that the ALJ did not reject that opinion, and in fact relied on it as

8    additional support for rejecting the examining physician's opinions.  The defendant

9    acknowledges the error in the ALJ's failure to discuss the opinion, but argues any such error was

10   harmless.  The undersigned agrees.  While the ALJ did not offer any analysis of the non-

11   examining physician's opinion, because the ALJ's reasons for discounting the examining

12   physician's opinions were legally sufficient, the court finds no error.

13   Plaintiff further contends that the ALJ erred in his questions to the vocational

14   expert, based on the limitations the ALJ rejected.  Hypothetical questions posed to a vocational

15   expert must set out all the substantial, supported limitations and restrictions of the particular

16   claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does

17   not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy

18   the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850

19   (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based

20   on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for

21   the ALJ's determination must be supported by substantial evidence in the record as a whole.  See

22   Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

23   Here, the ALJ propounded questions to the vocational expert based on the

24   limitations he found were supported by the record.  As the undersigned finds no error in the

25   ALJ's treatment of the medical opinions, the ALJ's determination as to plaintiff's limitations

26   based on that analysis was not erroneous.  The ALJ was not required to include limitations in a

1   hypothetical presented to the vocational expert he did not find to be supported by the record.  The

2   only limitations the ALJ was required to include were those he determined were supported by the

3   evidence.  Plaintiff's contention that he was reacquired to include the rejected limitations is not

4   persuasive.  The undersigned finds no error in the hypothetical relied upon by the ALJ.

5          The undersigned finds the reasons the ALJ gave for discounting Dr. Cushman's

6   and Dr Felix's opinions were specific and legitimate, and supported by the record, and the

7   hypothetic presented to the vocational expert was similarly supported by the record.

8                    **B.    PLAINTIFF'S CREDIBILITY**

9          The Commissioner determines whether a disability applicant is credible, and the

10   court defers to the Commissioner's discretion if the Commissioner used the proper process and

11   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

12   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

13   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

14   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

15   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

16   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

17   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

18   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

19   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

20          If there is objective medical evidence of an underlying impairment, the

21   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

22   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

23   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

24             The claimant need not produce objective medical evidence of the
               [symptom] itself, or the severity thereof.  Nor must the claimant produce
25             objective medical evidence of the causal relationship between the
               medically determinable impairment and the symptom.  By requiring that
26             the medical impairment "could reasonably be expected to produce" pain or

                                            11

another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, the ALJ did not find plaintiff to be credible.  As to plaintiff's testimony and credibility, the ALJ stated that plaintiff:

has alleged an inability to perform all work due to his alleged impairment and other symptoms.  The claimant's statements alone do not establish that he is disabled.  Such statements must be considered, first, in light of the objective medical findings which, in this case, are limited.  Such statements must also be considered in light of other evidence such as the claimant's daily activities, precipitating and aggravating factors, use of medications, treatment other than medications, and other factors concerning his functional limitations and restrictions due to his symptoms.  See 20 CFR 404.1529 and Social Security Ruling 96-7p.  In this case, I do not find the clamant's statements regarding his limitations and other symptoms convincing or credible.

Numerous inconsistencies damage the claimant's credibility. The claimant told Dr. Cushman that he has been to jail on five occasions as an adult, with the last jail stay at the age of 22. The longest time he ever spent in jail was two months (Exhibit 4F, page 2). He testified that he had been incarcerated twice for four months. The claimant told Dr. Cushman that he drank alcohol regularly up until age 24 and he denied ever resuming regular alcohol usage after that age (Exhibit 4F, page 2). He said the last time he drank any alcohol was in his mid 20's. This is contradicted by his hearing testimony. In a work history report, the claimant reported that he worked at Big 5 from March through June 2008, working 8 hours a day, 5 days a week (Exhibit 3E). He testified that he worked at Big 5 only 15 to 20 hours a week.

The claimant told Dr. Cushman that he spends most of his time at home watching television. He spends time playing with his young son and liked to "goof around in the yard" (Exhibit 4F, page 3). Dr. Cushman noted that the claimant said he "helps out" with chores, but later the doctor wrote that he did not do any indoor chores. He said he does some outdoor chores. The doctor noted that the claimant did little in the way of food preparation, but he later wrote that he never prepares food. He does not read. He has friends but does not socialize.

The record contains no evidence that the claimant sought mental health treatment for his condition, but was refused for an inability to pay. This lack of treatment, despite allegations of debilitating mental symptoms, is inconsistent with a level of severity that would preclude all sustained work activity.

Moreover, my observations of the claimant at the hearing were that he had no observable difficulties. His testimony was responsive and spontaneous and was not consistent with a person with allegedly disabling impairments. In making these observations of the claimant, I am not basing my entire decision or credibility assessment upon his appearance at the hearing alone. This is but one factor that I have considered along with all the other evidence of record (Social Security Ruling 96-7p).

(CAR 18-19).

Plaintiff contends the ALJ's reasons for discrediting his testimony are not legitimate. He argues that the inconsistencies in his statements were due to his memory problems and were not intended to mislead, and that the lack of treatment is explained by his lack of medical insurance. Defendant counters that the reasons provided, including plaintiff's daily activities, the ALJ's own observations at the hearing, as well as the inconsistencies and lack of treatment, are sufficient and supported by the record.

1    Contrary to plaintiff's argument, the ALJ's reasons set forth above are sufficiently

2    clear and convincing reasons for discrediting his testimony.  The ALJ analyzed his statements,

3    using appropriate considerations, and specifically found his daily activities inconsistent with an

4    allegation of such limitations, as well as his inconsistent statements, the lack of attempts to

5    receive mental health treatment, as well as the ALJ's own observations at the hearing.  While the

6    court may have reached a different conclusion, this court cannot substitute it's own interpretation

7    over the ALJ's.   If substantial evidence supports the administrative findings, or if there is

8    conflicting evidence supporting a particular finding, the finding of the Commissioner is

9    conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

10    Plaintiff's contention that the inconsistencies the ALJ complained of fail to show

11    an attempt to mislead is an insufficient argument.  Plaintiff does not cite to any support for his

12    contention that a lack of intent to mislead is sufficient to explain away inconsistencies in the

13    record.  Inconsistent statements is one of the factors an ALJ may properly take into consideration

14    when evaluating the credibility of a claimant.  The ALJ's use of those inconsistent statements

15    here was not erroneous.  Similarly, plaintiff's lack of mental health treatment is a factor for the

16    ALJ to use in such evaluation.  Plaintiff is correct, that the lack of medical insurance and finances

17    to pay for treatment may in some situations explain away the lack of treatment.  But here, the

18    ALJ found plaintiff's lack of treatment was inadequately explained, as there were no attempts at

19    all to obtain treatment such as from a low cost clinic or sliding scale provider, nor did plaintiff

20    attempt to obtain treatment but was turned away for lack of payment.  Finally, the ALJ used his

21    own observations of plaintiff at the hearing to support his credibility determination.  While this

22    reason cannot be used as the sole reason to discredit a plaintiff, the ALJ's own observation of a

23    claimant during the hearing is a factor the ALJ may use in determining his credibility.  See

24    Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Neither may the ALJ rely on his

25    own observations of the claimant at the hearing as the sole reason for rejecting the claimant's

26    complaints.") (citing Fair v. Bowen, 885 F.2d 597, 602 (9thcir. 1989)).  Here, the ALJ's own

1   observations was but one of several reasons set forth in his credibility determination.

2          Where the evidence is susceptible to more than one rational interpretation, one of

3   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

4   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

5   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

6   Cir. 1988).  Here, the reasons the ALJ set forth for discrediting plaintiff are supported by the

7   record.  While plaintiff does not agree with the reasons, the record as a whole does support such

8   findings, and the court finds the reasons set forth are sufficiently clear and convincing, and

9   supported the record as a whole.  Giving the ALJ's opinion the proper deference it is entitled, the

10  undersigned cannot find the ALJ's credibility determination was erroneous.  See Fair, 885 F.2d at

11  604.

12                        **D.  THIRD PARTY STATEMENTS**

13          Similarly, plaintiff contends the ALJ improperly discredited the statements of his

14  wife, sister, and mother who each provided statements regarding his limitations.  In determining

15  whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning

16  a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R.

17  §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's

18  symptoms or how an impairment affects ability to work is competent evidence . . . and therefore

19  cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.

20  1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must

21  give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same

22  reasons for rejecting plaintiff's statements to reject third-party statements where the statements

23  are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)

24  (approving rejection of a third-party family member's testimony, which was similar to the

25  claimant's, for the same reasons given for rejection of the claimant's complaints).

26  / / /

                                    15

1    In regards to the plaintiff's witnesses' statements, the ALJ set forth plaintiff's

2   wife's statement.  He then determined:

3         I give this statement reduced weight.  The alleged mental
          limitations are not supported by the objective medical evidence.  I
4         further note that the claimant currently lives with Mrs. Pedro and
          thus she stands to gain financially should the claimant be found
5         disabled.  Finally, given the close relationship, it is possible that
          she was influenced by her desire to help the claimant.  See, Dodrill
6         v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

7   (CAR 19).

8         As to plaintiff's mother's statement the ALJ stated:

9         She confirmed that the claimant was abused as a child.  She
          reported that he is "paralyzed by fear" and cannot leave the house
10        for very long or be around others, even his family, for very long.
          He needs to be accompanied by someone when he leaves his
11        house.  I give this opinion reduced weight.  Other evidence
          indicates that the claimant can go out alone.  His wife indicated he
12        has no problem getting along with family, friends, and neighbors.

13  (CAR 19).

14        Finally, as to plaintiff's sister's statement, the ALJ stated:

15        She confirmed that the claimant was molested as a child.   She said
          he does not like to leave his home.  She said he cannot keep a job
16        and is unable to take orders from anyone.  He has a hard time
          controlling his emotions.  He depends on his wife for everything.
17        He will not go to the store, and his wife [does] all the cooking,
          cleaning, shopping and bill paying.  He has difficulty sleeping and
18        difficulty attending family functions.  She did not believe he can
          ever hold a job for longer than a month or two.  I give reduced
19        weight to this statement.  Ms. Pedro is not a vocational expert and
          her opinion as to whether the claimant can work is of little
20        evidentiary value.  Her statement that the claimant does not [do]
          cleaning or shopping is contradicted by other evidence.

21  (CAR 19).

22        Plaintiff contends the ALJ failed to provide proper reasons for rejecting the lay

23  witness statements, that the reasons given were not specific or germane, were without merit and

24  refuted by the record.  Specifically he argues his wife's statement was consistent with the

25  opinions of the examining psychologists, and that being a family member is not a valid basis for

26  rejecting her testimony, and that his sister's statement supported his wife's statement and did not

16

1  offer a vocational opinion.  He contends all three statements were consistent with the examining
2  physician's opinions and plaintiff's own testimony.

3          Defendant counters that the reasons provided were germane and that the
4  statements were inconsistent with the record.  In addition, defendant contends that if there was an
5  error in the ALJ's treatment of the witness statements, any error was harmless.  The statements
6  by plaintiff's witnesses did not differ significantly from plaintiff's own testimony, and since the
7  ALJ provided adequate reasons for discounting plaintiff's testimony, the same reasons could be
8  used to discount the witness statements that were similar.

9          The undersigned finds that the ALJ did set forth reasons, germane to each witness,
10  as to why he was discounting the statements.  The reasons required for the ALJ to set forth need
11  only be germane to the witness.  There is no requirement that the reasons are clear and
12  convincing.  While the plaintiff may disagree with the reasons given, the ALJ did consider the
13  statements and gave reasons for not finding the statements compelling.

14          The undersigned also agrees with the defendant's argument that even if the
15  reasons provided, which were minimal, were insufficient, any error would be harmless.  See
16  Stout v. Commissioner, 454 F.3d 1050, 1053-54 (9th Cir. 2006).  As defendant contends, the
17  ALJ could have rejected the lay witness statements on the same basis as plaintiff's statements
18  were rejected as the statements were consistent with plaintiff's testimony.  Therefore, even if
19  there was error, which the undersigned does not find, the error would have been harmless.
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /

**IV.  CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's motion for summary judgment (Doc. 18) is denied;

2.      Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

3.      The Clerk of the Court is directed to enter judgment and close this file.


DATED:  September 30, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE